IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYRONE MICHAEL BRINKLEY, | : Civil No. 3:22-cv-256 |
| Plaintiff | : (Judge Mariani) |
| v. | : |
| CATRICIA HOWARD, *et al.*, | : |
| Defendants | : |

**MEMORANDUM**

Plaintiff Tyrone Michael Brinkley ("Brinkley"), an inmate who was confined, at all relevant times, at the Federal Correctional Institution, Allenwood, in White Deer, Pennsylvania,[1] initiated this action pursuant to *Bivens*[2], 28 U.S.C. § 1331. Brinkley subsequently filed an amendment to the complaint. (Doc. 36). Named as Defendants are Warden Howard, Case Management Coordinator Gainer, Unit Manager Nicholas, and two John Doe individuals. Presently pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 44). Brinkley failed to respond

---

[1]  Brinkley has been released to a Residential Reentry Center. *See* Federal Bureau of Prisons' online Inmate Locator, available at: https://www.bop.gov/inmateloc/ (last accessed May 1, 2023).

[2]  *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court created a limited federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers.

to the motion and the time for responding has now passed.[3] Therefore, the motion is deemed unopposed and ripe for resolution. For the reasons set forth below, the Court will grant Defendants' motion. The Court will also dismiss the action against the John Doe Defendants pursuant to Federal Rule of Civil Procedure 4(m).

## I.   Allegations of the Complaint

While incarcerated at the Federal Correctional Institution, Schuylkill, Pennsylvania, Brinkley alleges that he completed the residential component of the Residential Drug Abuse Program ("RDAP"). (Doc. 1 ¶ 9). He alleges that he was entitled to a one-year sentence reduction if he completed the final two phases of the three-phase RDAP program. (*Id.* ¶ 10). In May of 2017, Brinkley was transferred to FCI-Allenwood and completed twelve months of follow-up services. (*Id.* ¶ 11). The Transitional Drug Abuse Treatment component must be completed while in a Residential Reentry Center. (*Id.* ¶ 12).

On or about February 20, 2019, Brinkley's home plan was completed and sent to the case manager supervisor for approval. (*Id.* ¶ 14). However, on February 23, 2019, Brinkley was brought to the Special Housing Unit pending an investigation into his violation of prison rules. (*Id.* ¶ 16). Brinkley alleges that on February 25, 2019, he asked the case manager supervisor about the status of his release date. (*Id.* ¶ 18). The case manager supervisor

---

[3]   Brinkley was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed. (Docs. 47, 50) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

allegedly informed Brinkley that the release process was discontinued pending the outcome of his disciplinary offense. (*Id.* ¶ 19).

On March 5, 2019, Brinkley was informed that he was expelled from the RDAP program due to his 100-series offense. (*Id.* ¶ 22). Brinkley contends that governing RDAP policies had been amended to remove 100-series offenses as immediate grounds for disqualification from RDAP. (*Id.* ¶ 26). He alleges that Defendants violated his Eighth and Fourteenth[4] Amendment rights by intentionally delaying his release from prison because they did not process his halfway house packet before being formally charged with a violation of prison rules. (*Id.* ¶¶ 43-46).

## II. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(6)

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

---

[4] Although Brinkley invokes the Fourteenth Amendment, the Fourteenth Amendment only applies to the actions of state actors and not federal actors. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). The Court therefore addresses Brinkley's due process claim under the Fifth Amendment.

3

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

4

omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

### B. *Bivens* Claims

A *Bivens* civil rights action asserted under 28 U.S.C. § 1331 is evaluated using the same standards applicable to a 42 U.S.C. § 1983 civil rights action. *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975). To state a claim under *Bivens*, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. *See Young v. Keohane*, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

### III. Discussion

Defendants move to dismiss the complaint on the following grounds: (1) a *Bivens* remedy is not available for Brinkley's claims; (2) Brinkley failed to state a Due Process Claim; (3) Brinkley failed to state an Eighth Amendment Claim; (4) Brinkley failed to establish the personal involvement of Defendants Howard and Nicholas; and (5) Defendants are entitled to qualified immunity. (*See* Doc. 45). Because the Court declines to extend

*Bivens* to Brinkley's Fifth and Eighth Amendment claims, the Court does not reach Defendants' remaining arguments.

### A.  A *Bivens* Remedy is not Available for Brinkley's Claims

Defendants first move to dismiss Brinkley's due process and deliberate indifference claims on the basis that there is no *Bivens* remedy available for these Fifth and Eighth Amendment claims following the United States Supreme Court's decision in *Ziglar v. Abbasi*, 582 U.S. 120, 137 S. Ct. 1843 (2017). (Doc. 45, pp. 11-18). In *Bivens*, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983. *See Bivens*, 403 U.S. at 397. Since that decision, the Supreme Court has extended the *Bivens* remedy only twice: first, to a claim for gender discrimination under the Fifth Amendment's Due Process Clause, *see Davis v. Passman*, 442 U.S. 228, 248-49 (1979), and then to a claim for inadequate prison medical care under the Cruel and Unusual Punishment Clause of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 18-23 (1980).

In *Abbasi*, the Supreme Court set forth a two-part test to determine whether a *Bivens* claim may proceed. First, courts must ascertain whether the case presents a "new context." *Abbasi*, 582 U.S. at 138. If the case differs "in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court, then the context is new." *Id.* at 139. And the meaning of "new context" is "broad." *See Hernandez v. Mesa*, 589 U.S. ___, 140 S. Ct.

735, 743 (2020). Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the *Bivens* remedy. *See id.* This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *See Egbert v. Boule*, 596 U.S. ___, 142 S. Ct. 1793, 1798 (2022) (quoting *Abbasi*, 582 U.S. at 136). If a court concludes that "even a single reason" exists to pause "before applying *Bivens* in a new context or to a new class of defendants," then special factors counseling hesitation exist and a *Bivens* remedy does not lie. *See id.* (quoting *Hernandez*, 140 S. Ct. at 743) (internal quotation marks omitted); *Hernandez*, 140 S. Ct. at 743.

In *Egbert v. Boule*, 596 U.S. ___, 142 S. Ct. 1793, the Supreme Court reemphasized that the Court's continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional…recognizing a new *Bivens* cause of action is "a disfavored judicial activity." *Egbert*, 152 S. Ct. at 1797 (quoting *Abbasi*, 137 S. Ct. at 1843; *Hernandez*, 140 S. Ct. at 742-43). *Egbert* clarified that the two-step process laid out in *Abbasi* "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 1798. In other words: if there is "any rational reason (even one) to think that Congress is better suited" to determine the propriety of a cause of action, then a *Bivens* action cannot proceed. *Id.* at 1805. The court must broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'"—and if the answer is "yes,"

7

or potentially yes, the plaintiff cannot recover under *Bivens*. *See id.* (quoting *United States v. Stanley*, 483 U.S. 669 681 (1987)). The Court proceeds with *Abbasi*'s two-step analysis.

### 1. *New Context*

Brinkley alleges that he was terminated from the RDAP program in violation of his right to due process. He also alleges a non-bodily injury stemming from the Bureau of Prison's ("BOP") alleged failure to process his halfway house packet, in violation of his Eighth Amendment rights. There is no question that Brinkley's Fifth and Eighth Amendment claims present new contexts—they are "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 582 U.S. at 139. Brinkley's instant claims on their face "bear little resemblance" to "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma," the contexts previously recognized by the Supreme Court. *Abbasi*, 582 U.S. at 140.

Of the three cases in which the Supreme Court has recognized *Bivens* claims, only *Davis* and *Carlson*—involving Fifth and Eighth Amendment claims, respectively—are tenably relevant. In *Davis*, the Court concluded that the Fifth Amendment's Due Process Clause provided a damages remedy to an administrative assistant claiming that a Congressman had discriminated against her on the basis of gender. *See Davis* 442 U.S. at 248-49. In *Carlson*, a prisoner's estate filed suit alleging that prison officials had been fully aware of the prisoner's serious "chronic asthmatic condition" as well as the "gross

inadequacy" of medical facilities and staff at the Federal Correctional Center in Terre Haute, Indiana. *See Carlson*, 446 U.S. at 16 n.1. The estate alleged officials failed to provide the prisoner "competent medical attention for some eight hours after he had an asthmatic attack," including an inordinate delay of his transfer to an outside hospital, all of which led to the prisoner's death. *See id.*

Brinkley's Fifth Amendment claim for relief regarding his termination from the RDAP program is decidedly different from the gender discrimination claim in *Davis*. And Brinkley's claim that the BOP failed to process his halfway house packet is markedly different from the Eighth Amendment inadequate medical care claim recognized in *Carlson*. *See, e.g., Mammana v. Barben*, 856 F. App'x 411 (3d Cir. 2021) (nonprecedential) (rejecting prisoner's argument that *Carlson* gives footing to Eighth Amendment conditions-of-confinement claim against federal prison officials). The claims do arise under the same constitutional amendments, but a common constitutional basis is simply not enough to link a new *Bivens* theory to an existing *Bivens* context. *See Hernandez*, 140 S. Ct. at 743 (indicating courts must "look beyond the constitutional provisions invoked"). Nor is it enough that the new theory matches an existing context at a high level of generality, i.e., "prisoner mistreatment." *Cf. Abbasi*, 582 U.S. at 146-49; *see also Hernandez*, 140 S. Ct. at 743 ("[O]ur understanding of a 'new context' is broad.").

Brinkley's Fifth and Eighth Amendment claims differ meaningfully from *Davis* and *Carlson*. They differ in terms of the nature and scope of the actions alleged, and the legal

standards that would apply. *See Abbasi*, 582 U.S. at 140-41; *see also Mammana v. Barben*, No. 4:17- CV-645, 2020 WL 3469074, at *3 (M.D. Pa. June 25, 2020) (Brann, J.) (noting differing elements for medical-deliberate-indifference and conditions-of-confinement claims), *aff'd*, 856 F. App'x 411. The Court thus concludes that Brinkley's Fifth and Eighth Amendment claims present new contexts for purposes of *Bivens*.

### 2. Special Factors

Because the Court concludes that Brinkley's claims present new contexts, the Court must next ask whether "there are any special factors that counsel hesitation" in extending *Bivens*. *See Hernandez*, 140 S. Ct. at 743 (internal quotation marks and alterations omitted) (quoting *Abbasi*, 137 S. Ct. at 1857). Although courts may consider various special factors, *see Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018) (citing *Abbasi*, 137 S. Ct. at 1856-63), two "are 'particularly weighty': availability of an alternative remedial structure and separation-of-powers concerns," *see Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020) (quoting *Bistrian*, 912 F.3d at 90).

In *Egbert*, the Supreme Court reiterated its prior emphasis on the availability of alternative remedies, further extending the Court's longstanding view that "when alternative methods of relief are available, a *Bivens* remedy usually is not," *see Abbasi*, 582 U.S. at 145 (citing *Bush v. Lucas*, 462 U.S. 367, 386-88 (1983); *Schweiker v. Chilicky*, 487 U.S. 412, 425-26 (1988); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 73-74 (2001); *Minneci v. Pollard*, 565 U.S. 118, 125-26 (2012)). The BOP's administrative remedy program provides

an alternative process for seeking relief. *See Malesko*, 534 U.S. at 68 (holding that "administrative review mechanisms" can provide "meaningful redress"—even if they do not "fully remedy the constitutional violation"). And *Egbert* makes clear that the question for this Court is not whether a *Bivens* damages remedy would be more effective, nor even whether the existing remedy is sufficient. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807. The existence of the BOP's administrative remedy process "independently forecloses" a *Bivens* remedy in this new context. *Id.* at 1806.

Assuming *arguendo* the BOP's administrative remedy program does not constitute an alternative remedy, the Court must still consider whether there are other factors—such as separation-of-powers concerns—that weigh against creating a *Bivens* remedy to fill the void. *See Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). The essential inquiry "is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *See Abbasi*, 582 U.S. at 135. Thus, any special-factors assessment must seek to discern whether Congress would want the federal judiciary to impose "a new substantive legal liability" in a particular case. *Id.* at 136. In *Egbert*, the Supreme Court stressed that "even one" reason to believe the federal legislature is better equipped to provide a damages remedy means a *Bivens* action cannot proceed. *See Egbert*, 142 S. Ct. at 1805. Congress's silence, particularly when it has already legislated in a given sphere, can be

11

"telling" in this analysis. *See Abbasi*, 582 U.S. at 144. The Supreme Court has suggested that Congress's omission of a "standalone damages remedy against federal jailers" from the Prison Litigation Reform Act ("PLRA"), enacted 15 years after *Carlson*, may imply a congressional intent to limit *Carlson*'s damages remedy to its context. *See id.* at 1865. The Third Circuit Court of Appeals has disagreed with this notion and opined that Congress's silence in the PLRA does not necessarily signal legislative intent that "a *Bivens* cause of action should not exist at all." *See Bistrian*, 912 F.3d at 93; *see also Mack*, 968 F.3d at 323-24 (quoting *Bistrian*, 912 F.3d at 93). However, the Third Circuit has also observed, "congressional silence on prison litigation can still counsel hesitation in some contexts," particularly when—as here—the alleged mistreatment is "different . . . than that alleged in [*Davis* and] *Carlson*." *Mammana*, 856 F. App'x at 415.

The claims before the Court warrant hesitation. The Supreme Court has never extended *Bivens* to the Fifth and Eighth Amendment claims before the Court. Based on the foregoing, the Court concludes, as many courts have concluded,[5] that special factors weigh

---

[5] *See, e.g., Zavala v. Rios*, 721 F. App'x 720, 721-22 (9th Cir. 2018) (declining to extend *Bivens* to inmates' Fifth Amendment due process claims); *Louis-El v. Ebbert*, 448 F. Supp. 3d 428, 439-41 (M.D. Pa. 2020) (same); *Mammana v. Barben*, No. 20-2364, 2021 WL 2126847, at *4 (3d Cir. May 21, 2021) (footnote omitted) (plaintiff alleging Eighth Amendment violation for confinement for four days "in a chilled room with constant lighting, no bedding, and only paper-like clothing" did not state a *Bivens* claim, with the Third Circuit noting plaintiff "asks for a new implied cause of action to sue federal prison officials for unconstitutional conditions of confinement, a step never taken by the Supreme Court nor any circuit court"); *Hill v. Lappin*, No. 3:11-cv-1609, 2021 WL 2222725, *3 (M.D. Pa. June 2, 2021) (noting that "courts began to appreciate *Abbasi's* watershed scope, [and] the better-reasoned authority has declined to recognize a *Bivens* remedy for Eighth Amendment conditions-of-confinement . . .claims.").

against extending *Bivens* to these new contexts. The Court, therefore, declines to extend *Bivens* to Brinkley's Fifth and Eighth Amendment claims, and his claims will be dismissed.

## IV. Leave to Amend

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). The Court finds that granting leave to amend would be futile based on the legal defects identified in Brinkley's complaint and amendment; further amendment would not cure the defects identified herein.

## V. Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). The John Doe Defendants were named in the complaint that was filed on February 22, 2022 and, to date, have not been identified or served in this case. The

13

Court must engage in a two-step process in determining whether to dismiss the unidentified, non-served Defendants or grant Brinkley additional time to effect service. "First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.* Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Brinkley failed to establish good cause. After the expiration of the ninety-day time period set forth in Rule 4(m), the Court notified Brinkley that the action against the John Doe Defendants was subject to dismissal and directed him to show cause why the action against these Defendants should not be dismissed pursuant to Rule 4(m). (Doc. 42). In response to the Rule 4 show cause order, Brinkley states that he attempted to obtain counsel for purposes of identifying the John Doe Defendants. (Doc. 46). However, Brinkley's *pro se* status is not good cause to excuse his failure to timely identify or serve

14

these Defendants. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004). Based upon the lack of a reasonable explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Brinkley failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m). It is Brinkley's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion. (*See* Doc. 9 ¶ 7) (advising Brinkley that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Brinkley's lack of good faith effort to identify or serve the John Doe Defendants, despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the non-identified, non-served Defendants will be dismissed from this action.

## VI. Conclusion

Based on the foregoing, the Court will grant Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 44). The Court will also dismiss the action against the John Doe Defendants pursuant to Federal Rule of Civil Procedure 4(m).

A separate Order shall issue.

*[signature]*

Robert D. Mariani
United States District Judge

Dated: May ___1___, 2023

16